IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LATINA W.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 21 C 5344 |
| v. ) | |
| ) | Magistrate Judge Beth W. Jantz |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Latina W.'s application for Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 10, Pl.'s Mot.] is denied, and the Commissioner's cross-motion for summary judgment [dkt. 13, Def.'s Mot.] is granted. The Court affirms the Commissioner's final decision.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

**BACKGROUND**

I.   **Procedural History**

On September 4, 2018, Plaintiff filed a claim for SSI, alleging disability since August 1, 2018, due to bipolar disorder and a "sense of incompetence." [Dkt. 9-1, R. 141, 165.] Plaintiff's claim was denied initially and again upon reconsideration. [R. 69, 84.] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held by telephone on March 5, 2020. [R. 35-57.] Plaintiff personally appeared by telephone and testified at the hearing without representation. [R. 37-40, 45-53.] Vocational expert ("VE") Kari Seaver also testified. [R. 53-56.] On November 30, 2020, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. [R. 17-30.] The Social Security Administration Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. [R. 1-3.]

II.  **The ALJ's Decision**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 20-29.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her application date of September 4, 2018. [R. 20.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: bipolar disorder, psychotic disorder, borderline intellectual functioning, major depressive disorder, and personality disorder. [*Id.*] The ALJ concluded at step three that her impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 20-22.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with several non-exertional limitations: she can

understand, remember, and carry out short, simple work instructions; sustain concentration and attention for two hours at a time; and persist at simple routine tasks over eight-hour days and forty-hour weeks. [R. 22-28.] Plaintiff also can make simple work-related decisions and carry out simple plans and can adapt to changes and stressors associated with simple routine competitive work activities. [*Id.*] Additionally, Plaintiff can interact briefly and superficially with coworkers and supervisors performing job duties that do not involve tandem tasks or teamwork and should have no more than incidental contact with the public. [*Id.*] At step four, the ALJ concluded that Plaintiff did not have any past relevant work. [R. 28.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act. [R. 28-29.]

## **DISCUSSION**

### I.  **Judicial Review**

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national

economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner and is reviewable by this Court. 42 U.S.C. § 405(g); *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). The Court plays an "extremely limited" role in reviewing the ALJ's decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's

4

analysis "must provide some glimpse into the reasoning behind [his] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

**II.      Analysis**

Plaintiff argues that (1) the ALJ's RFC finding was not supported by substantial evidence, and (2) the ALJ erred in relying on the VE's testimony. [Dkt. 10, Pl.'s Mem. at 6-15; dkt. 15, Pl.'s Reply at 2-3.] For the reasons that follow, the Court affirms the ALJ's decision.

**A. The ALJ's RFC Finding**

Plaintiff first argues that the ALJ's finding that Plaintiff could persist at simple and routine work-like tasks over the course of a full 40-hour week of work was not explained nor supported by substantial evidence. [Dkt. 10 at 6-13.] In particular, Plaintiff contends that the ALJ improperly equated her daily activities with the ability to work full-time. [*Id.* at 7-12.]

Although an ALJ should consider a plaintiff's daily activities in assessing the severity of a plaintiff's symptoms, an ALJ must be careful not to equate a plaintiff's ability to perform activities of daily living with an ability to work full time. *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020); *see Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) (ALJ must consider plaintiff's daily activities "with care"). Here, the ALJ evaluated Plaintiff's daily activities with the requisite care.

5

For example, although Plaintiff takes issue with the ALJ's step 3 evaluation of Plaintiff's ability to concentrate, persist, or maintain pace ("CPP"), *see* [Pl.'s Mem. at 11], the ALJ's consideration of her daily activities was appropriate in context. The ALJ pointed out that Plaintiff stated that she could perform household chores such as cleaning or mopping for thirty minutes at a time and that she could shop for groceries for a long time, which suggested "the ability to attend to task." [R. 21; *see* R. 178, 227.] The ALJ also contrasted Plaintiff's reported issues with focusing with Plaintiff's reports that she played basketball. [R. 21; *see* R. 179.] The ALJ thus did not compare Plaintiff's reported activities with an ability to work; instead, the ALJ merely used those activities to illustrate that Plaintiff's reported issues focusing were not as severe as she alleged. [R. 21.] Indeed, at step four, the ALJ specifically explained that he did not "consider these activities to be conclusive evidence the claimant can sustain the demands of full-time work activity, but finds that, when viewed in combination with the objective evidence and the claimant's course of treatment[,] they demonstrate an ability to perform significant activity on a regular and continuing basis." [R. 24.] Thus, the ALJ's discussion of Plaintiff's daily activities did not improperly equate them to an ability to work full-time. *See Jeske*, 955 F.3d at 593 (finding ALJ appropriately considered daily activities as one factor in assessing Plaintiff's symptoms).

Additionally, Plaintiff's daily activities were simply one part of the ALJ's analysis: the ALJ further supported his conclusions regarding both Plaintiff's CPP limitation and the ultimate RFC finding by evaluating the objective medical evidence and the opinion evidence in the record. [R. 21-22, 25-28.] In discussing Plaintiff's CPP limitation, the ALJ referenced that Plaintiff was often alert and oriented during treatment examinations and that even when Plaintiff had impaired attention and concentration during her last treatment visit, she continued to exhibit

average intelligence with thought content within normal limits. [R. 21; *see* R. 289, 307, 311, 313, 339, 385-86.] When assessing Plaintiff's RFC, the ALJ reviewed Plaintiff's medical treatment records in detail, concluding overall that "the noted stability with medication, often euthymic mood, reported activities, consultative examination findings, and issues with noncompliance" with treatment demonstrated that Plaintiff was not as limited as alleged and supported the ultimate RFC finding. [R. 27.] The ALJ also relied on the only opinion evidence in the record, that of the state agency psychological consultants, who translated their opinions concerning Plaintiff's limitations as follows: on initial review, that Plaintiff was able to understand and remember simple instructions, to maintain attention and concentration for 2 hours at a time and persist at simple tasks over 8- and 40-hour periods with normal supervision, and to tolerate minimum social demands of simple-task settings with only incidental contact with the public, and to tolerate simple changes in routine, avoid hazards, travel independently, and make and carry out simple plans; and on reconsideration, that Plaintiff would be able to perform 1-2 step tasks, complete a normal workday, interact briefly and superficially with coworkers and supervisors, and adapt to changes and stressors associated with simple, routine work activities. [R. 22, 27-28; R. 65-66, 77.] The ALJ found these opinions "generally persuasive," but explained that the limitation to 1-2 step tasks was not entirely consistent with the record, including the reconsideration consultant's own finding that Plaintiff was not significantly limited in the ability to understand and remember very short and simple instructions. [R. 28.]

Plaintiff's remaining arguments regarding the RFC finding are likewise unavailing. Plaintiff maintains that the ALJ did not address the state agency psychological consultants' opinions that Plaintiff was "moderately limited in performing activities within a schedule, maintaining regular attendance, or being punctual within customary tolerances," [Pl.'s Mem. at

7

12], but this ignores that, as just discussed, the ALJ *did* evaluate the consultants' translation of those moderate limitations into their specific RFC formulations. [*See* R. 65-66, 77.] The ALJ did therefore consider the moderate limitations in adopting the ultimate RFC.

Lastly, Plaintiff faults the ALJ for placing too much emphasis on Plaintiff's completion of an internship and training at CleanSlate as if they were two different things when they were actually one training period and Plaintiff did not ultimately obtain a job with CleanSlate. [Pl.'s Mem. at 11-12.] The ALJ acknowledged, however, that Plaintiff was "accepted into an internship, and participated in training intended to lead into a full-time position," but that she was not hired for the position after the training was completed. [R. 24.] Thus, the Court does not view the reference to "an internship and training" a few sentences later in the decision as referring to two different things. [*Id.*] Even if it had, however, this trivial mistake would not warrant reversal in light of the ALJ's otherwise adequate analysis.

The Court concludes that the ALJ's RFC finding was supported by substantial evidence overall. The ALJ considered what limited medical evidence there was in the record, including the only opinion evidence (that of the two state agency psychological consultants), and carefully crafted an RFC that would accommodate Plaintiff's mental limitations.

**B. The VE's Testimony**

Plaintiff also argues that the ALJ erred in relying on the VE's testimony concerning jobs Plaintiff could perform because the testimony was unreliable. [Pl.'s Mem. at 13-15.] In Plaintiff's view, the ALJ should have recognized that the hypothetical posed (and ultimate RFC finding) that limited Plaintiff to interacting only briefly and superficially with coworkers and supervisors would prevent Plaintiff from completing training for a new job and that the VE's testimony that Plaintiff could perform the identified jobs conflicted with the Department of

Labor's Occupational Requirements Surveys concerning the length of the training those jobs would require. [*Id.*]

An ALJ has an "affirmative responsibility" to ask whether a VE's testimony conflicts with information provided in the Dictionary of Occupational Titles ("DOT") before relying on that evidence to support a finding that a plaintiff is not disabled. *Overman v. Astrue*, 546 F.3d 456, 462-63 (7th Cir. 2008) (quoting SSR 00-4p, 2000 WL 1898704, at *4). If there is an "apparent conflict" between a VE's testimony and the DOT, then an ALJ must obtain "a reasonable explanation for the apparent conflict." *Overman*, 546 F.3d at 463 (quoting SSR 00-4p at *5). That duty is even more important where, as here, a plaintiff is *pro se* at the hearing and the ALJ has an enhanced obligation to fully develop the record. *See Purvis v. Berryhill*, No. 15-cv-11580, 2017 WL 1022014, at *11 (N.D. Ill. Mar. 16, 2017). When a conflict is not raised at the hearing, a plaintiff does not waive the right to press the argument later, but to warrant relief, "the conflict has to be obvious enough that the ALJ should have picked up on [it] without any assistance." *Overman*, 546 F.3d at 463.

Here, perhaps because Plaintiff was not represented by counsel at the hearing,[2] and did not understand the VE's testimony (as she stated on the record), Plaintiff raised no challenge to the VE's testimony. [*See* R. 55.] The ALJ did ask the VE if her testimony was consistent with the DOT, however, and she responded in the affirmative. [R. 56.] Thus, this case turns on whether a conflict with the DOT was so obvious that the ALJ should have recognized it on his own.

As an initial matter, Plaintiff does not argue that there even was a conflict with *the DOT*. Rather, she contends that the VE's testimony contradicted other data—namely, the Department

---

[2] Plaintiff makes no challenge to the validity of her waiver of her right to representation.

9

of Labor's Occupational Requirements Surveys' reporting of the length of the training those jobs would require. [Pl.'s Mem. at 13-14.] Plaintiff does not cite any authority for the proposition that a VE's testimony is unreliable if it conflicts with data outside of the DOT. *See, e.g., Amy D. v. Kijakazi*, No. 21 C 1646, 2023 WL 2242005, at *12 (N.D. Ill. Feb. 27, 2023) (rejecting unsupported argument that VE's testimony was unreliable because it conflicted with data in "O*Net"). The Court is therefore not convinced that the ALJ had any obligation to question the VE about the Department of Labor surveys or remedy any purported conflict.

Further, unlike the other cases in this Circuit that the Court has identified that were remanded, the VE did not bring up during her testimony any supposed conflict between a training or probationary period and an ability to interact only briefly and superficially with supervisors and coworkers, either on her own or through questioning from counsel. *See, e.g., Sandy C. v. Kijakazi*, No. 4:21-cv-00173-KMB-TWP, 2023 WL 2133835, at *5 (S.D. Ind. Feb. 21, 2023); *Bernard L. v. Saul*, No. 19 CV 1223, 2020 WL 7027637, at *3 (N.D. Ill. Nov. 30, 2020); *Kenneth P. v. Saul*, No. 4:19-cv-0059-JMS-DML, 2019 WL 6463449, at *7 (S.D. Ind. Dec. 2, 2019). At this stage, then, all that exists is Plaintiff's speculation that, had the ALJ asked on his own, the VE would have testified that there indeed was a conflict between limiting Plaintiff to only brief and superficial interactions with supervisors and coworkers and also finding that she could perform the jobs of hand packer, assembler, and sorter. That speculation is simply too remote to demonstrate an actual, obvious conflict that the ALJ should have noticed and resolved on his own accord. Accordingly, the Court concludes that the ALJ did not err by relying on the VE's testimony at step 5 that there were jobs in the national economy that Plaintiff could perform.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment [dkt. 10] is denied, and the Commissioner's motion for summary judgment [dkt. 13] is granted. The Court affirms the Commissioner's final decision.

**SO ORDERED.**

Date: 6/29/23

BETH W. JANTZ
United States Magistrate Judge

11